**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**ASYA KHALIFAH,**

    Plaintiff,

  v.             Case No. 2:19-CV-02240-JAR-KGG

**MEGAN J. BRENNAN,**
**Postmaster General,**

    Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to D. Kan. Rules 7.1, 7.6, and 56.1, to the extent applicable, Defendant Megan J. Brennan, Postmaster General, by and through Stephen R. McAllister, United States Attorney for the District of Kansas, and Luke P. Sinclair, Assistant United States Attorney, submits this memorandum in support of her motion to dismiss the Complaint, or, in the alternative, for summary judgment, under Rules 12(b)(1) and 12(b)(6).

**I.  NATURE OF THE CASE**

  **A.  General Background.**

This is an employment discrimination case brought by a former probationary employee of the United States Postal Service. Plaintiff Asya Khalifah, who is an African American woman, asserts that she suffered an unspecified workplace injury, received medical treatment for it, and returned to work the same day. She claims that she was then subjected to discrimination and hostile work environment based upon her race, sex, and unidentified disability in violation of Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, and the Americans With Disabilities Act (ADA). She also claims that she was wrongfully terminated, though the legal basis for this claim is unclear.

Plaintiff's claims are organized as follows in her Complaint:

Count I          Race discrimination under Title VII
Count II         Retaliation for engaging in EEO activity under Title VII and the ADA
Count III        Disability discrimination under the Rehabilitation Act
Count IV         Hostile work environment under Title VII and the Rehabilitation Act
Count V          Wrongful termination

Defendant seeks dismissal of Plaintiff's Complaint or, alternatively, summary judgment, for the following reasons:

1.      Plaintiff failed to exhaust her Title VII claims in Counts I, II, and IV;

2.      Plaintiff has failed to plead plausible Rehabilitation Act claims in Counts III and IV and, even if she had done so, these claims were not exhausted;

3.      The Court lacks subject matter jurisdiction over Plaintiff's ADA claim in Count II, as Congress has not waived sovereign immunity under the ADA; and

4.      Regardless of the legal theory underlying it, Plaintiff's wrongful termination claim in Count V should be dismissed for lack of subject matter jurisdiction or failure to state a claim.

**B.      <u>Procedural Posture.</u>**

As an initial matter, Defendant addresses the posture of this motion.  This motion is based on failure to exhaust administrative remedies, failure to plead plausible claims, and lack of subject matter jurisdiction.  The latter two arguments do not require the Court to consider anything other than Plaintiff's Complaint and the law (i.e., whether Plaintiff has stated plausible claims under the Rehabilitation Act in her Complaint, and whether Plaintiff's ADA and wrongful termination claims are barred by sovereign immunity).

This motion to dismiss seeks, as an alternative, summary judgment because of the exhaustion arguments.  As is explained more fully below, the dispositive question on that issue is "whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation

which would reasonably grow out of the charges actually made [in the EEOC charge]." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Accordingly, the Court need only consider the allegations of Plaintiff's judicial Complaint and the substance of her administrative EEO complaint. The Court may consider the EEO complaint, which is attached to this memorandum, without resort to Rule 56 because, as explained below, Plaintiff refers to in in her Complaint, it is central to her case, and its authenticity is beyond dispute.

In the event Plaintiff contends that her claims were part of the EEO investigation, however, and in the interest of bringing an efficient conclusion to this litigation, Defendant has included additional relevant records from the EEO investigation. These records confirm that the race, sex, and disability-based claims in this lawsuit were not within the scope of the EEO investigation that was conducted. Consequently, to the extent the additional documents are considered, summary judgment is warranted with respect to Plaintiff's race, sex, and disability based claims under Title VII and the Rehabilitation Act.

Defendant has organized the statement of facts below to coincide with the alternative relief sought in this motion: Section II(A) sets forth facts in support of dismissal under Rules 12(b)(1) and 12(b)(6). Section II(B) includes additional facts based upon the attached declaration and portions of the EEO process, to the extent the Court resolves this motion under Rule 56.

## II.    STATEMENT OF THE RELEVANT FACTS

### A.    <u>Facts Material To Dismissal Under Rules 12(b)(1) and 12(b)(6).</u>

1.    Plaintiff is a Black American woman. (Doc. 1 at p. 4).

2.    Plaintiff's first day as a City Carrier Assistant Employee at the Shawnee Mission Main Post Office was March 2, 2017. (*Id.* at p. 4).

3.    On that day, Plaintiff injured herself while working. (*Id.* at p. 4).

3

4.    Plaintiff received medical attention and returned to work the same day.  (*Id.* at p. 4).

5.    Plaintiff was terminated on March 30, 2017.  (*Id.* at pp. 5-6).

6.    Plaintiff filed a formal EEO complaint in July of 2017.  (*Id.* at p. 3, 5; Plaintiff's EEO Complaint of Discrimination in the Postal Service, a true and correct copy of which is attached hereto, incorporated herein, and identified as Exhibit 1 (hereafter, "EEO Complaint")).[1]

7.    In her EEO Complaint, Plaintiff only selected the box for "retaliation" as the type of discrimination alleged.  She did not select disability, race, or sex as a type of discrimination alleged.  (Ex. 1 at p. 1).

8.    The EEO Complaint lacks any reference to Plaintiff's race or sex or any allegations of discrimination, harassment, or retaliation based thereon.  (*Id.* at pp. 1-2).

9.    The EEO Complaint lacks any reference to Plaintiff's disability, a reasonable request for accommodation, or a denial of an accommodation by Defendant.  (*Id.* at pp. 1-2).

10.   The EEO Complaint lacks any allegations of discrimination, harassment, or retaliation based upon disability.  (*Id.* at pp. 1-2).

11.   Rather, Plaintiff's EEO Complaint asserted that she injured her ankle, and that she "was talked to poorley (sic) and treated harhly (sic)" by her supervisor.  (*Id.* at p. 1).

---

[1] For purposes of dismissal, the Court may consider the EEO Complaint because Plaintiff referred to it in her Complaint, it is central to her case, and there can be no dispute as to its authenticity.  *See Krehbiel v. Union Pac. R.R. Co.*, No. 2:19-CV-02002-JAR-JPO, 2019 WL 3387049, at *2 (D. Kan. July 26, 2019) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997); *see also Dunmars v. Ford Cty., Kan. Bd. of Comm'rs*, No. 6:19-CV-01012, 2019 WL 3817958, at *3 (D. Kan. Aug. 14, 2019) ("[W]hile the court typically must consider only the complaint itself when ruling on a motion to dismiss, it may also consider documents which are central to the complaint and whose authenticity is undisputed. The administrative complaints are central to [Plaintiff's] case because he would not be able to recover without them.").

12.     Plaintiff asserted that her supervisor told her to "sit there until I get to you."  (*Id.* at p. 1).

13.     Plaintiff claimed that she reported this interaction to the union and that her supervisor "cut my hours, send me home for days in a row, tell me they had no talk to me harshly also telling other employees not to talk to me pretend I'm invisible, she spoke condescending to me."  (*Id.* at pp. 1-2).

14.     Plaintiff also asserted that she "got the run around" when she asked for a prescription card to obtain medication for her injury, and that she was told that Defendant could not prove that she was injured on the job.  (*Id.* at p. 2).

15.     Plaintiff claimed that "They wrote me up on a 60 day eval when it was not 60 days."  (*Id.* at p. 2).

16.     Plaintiff claimed that she was terminated within 45 days after her injury to avoid paying workers compensation benefits.  (*Id.* at p. 2).

17.     In sum, Plaintiff stated the following near the end of the EEO Complaint:

> I was retaliated on because I reported a sup for poor treatment and mishandling of me working and being injured while working. Retaliating on me also for reporting her for cutting my hours, sending me home, not entering my time, and talking to me harsh and condescending as well as telling other employees to act if I'm invisible.

(*Id.* at p. 2).

18.     On February 14, 2019, an EEOC Administrative Judge dismissed Plaintiff's EEO Complaint.  (Doc. 1 at p. 3).

5

**B.**   **Additional Facts Material To Summary Judgment On Failure To Exhaust Under Rule 12(b)(6).**[2]

19.   On April 7, 2017, Plaintiff initiated contact with an EEO representative, and the complaint was assigned an EEO Case No. 4E-640-0047-17.  (Paragraph 6 of the Declaration of Marissa Haley, a copy of which is attached hereto, incorporated herein, and identified as Exhibit 2).

20.   On July 6, 2017, after conducting pre-complaint counseling with Plaintiff, an EEO ADR Specialist issued a notice of her right to file a formal EEO complaint which described Plaintiff's allegations as follows:

> In this matter you alleged discrimination based on, Physical Disability (Right Ankle & Leg), and Retaliation (4E-640-0047-17) when:
>
> 1. On 3/2/2017, you were wrongfully terminated during your probationary period.
> 2. On Unspecified dates, you received a 60-day probationary review 45 days in as a basis for pre-determined termination and to also not pay your Continuation of Pay (COP) for your work-related injury.
> 3. On Unspecified dates, management harassed you by making belittling and derogatory remarks to you and about you to other employees.

(Ex. 2 at ¶7; Declaration Ex. A at p. 1).

21.   On July 27, 2017, Plaintiff filed her formal EEO Complaint.  (Ex. 2 at ¶8; Declaration Ex. B).

22.   On August 23, 2017, the Postal Service acknowledged receipt of the formal EEO complaint, provided her with a copy of the EEO ADR Specialist's inquiry report, and notified Plaintiff that the following issues were accepted for investigation:

> Specific Issue(s) Accepted: You allege discriminatory harassment on the basis of Retaliation (Not Specified) when:

---

[2] As noted above, Defendant submits that dismissal is appropriate under Rules 12(b)(1) and 12(b)(6) based solely upon Plaintiff's judicial Complaint and EEO Complaint.  To the extent Plaintiff argues otherwise, however, Defendant submits these additional facts related to the EEO investigation so that the Court may still conclude this case by summary judgment.

1. On March 30, 2017 you were terminated during your probation period;

2. On dates to be specified you were sent home for days and your hours were cut; and

3. On dates to be specified management made belittling and derogatory remarks about you to other employees.

(emphasis in original) (Ex. 2 at ¶9; Declaration Ex. C at pp. 1-2).

23.    The Acceptance For Investigation specifically noted the following:

It is noted, although during pre-complaint counseling you alleged, Disability (Right Ankle and Leg) as a bases for discrimination; however you did not re-allege this purview on your PS Form 2565, Formal Complaint.

(Ex. 2 at ¶10; Declaration Ex. C at p. 1, fn. 1).

24.    The Acceptance For Investigation letter further noted:

If you do not agree with the accepted issue(s) as defined above, you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of the date of your receipt of this letter.

(emphasis in original) (Ex. 2 at ¶11; Declaration Ex. C at p. 2).

25.    The EEO ADR Specialist's Inquiry Report indicates that Plaintiff was advised that she was required "to submit documentation of his/her disability" if "discrimination based on disability was alleged," and such documentation was not submitted.  (Declaration Ex. C at p. 6).

26.    The Acceptance For Investigation and accompanying ADR Specialist's Inquiry Report lack any reference to race, sex, or disability as bases for Plaintiff's claims.  (Declaration Ex. C at pp. 1-9).

27.    The Postal Service's National Equal Opportunity Investigative Services Office ("NEEOISO") did not receive any written response from Plaintiff stating that she disagreed with the defined accepted issues set forth in the Acceptance For Investigation.  (Ex. 2 at ¶12).

28.    NEEOISO assigned an EEO Investigator to conduct an investigation and prepare a

written report, and on September 8, 2017, the EEO Investigator sent Plaintiff a letter stating in part

the following:

> The accepted issue under investigation are: Complainant alleged discriminatory
> harassment on the basis of Retaliation (Not specified) when: (1) on March 30, 2017,
> Complainant was terminated during her probation period; (2) On dates to be
> specified, Complainant was sent home for days and her hours were cut; and, (3) on
> dates to be Specified management made belittling and derogatory remarks about you
> to other employees.

(Ex. 2 at ¶13; Declaration Ex. D at p. 1).

29.    The EEO Investigator's letter states the following:

> If you allege that you were treated differently because of your purview/basis of
> race/color, age (+40), sex, national origin, religion, mental or physical disability, or
> reprisal, you should explain why you believe your complaint is based on the cited
> purview(s).

(emphasis in original) (Declaration Ex. D at p. 2).

30.    Upon conclusion of the EEO investigation, NEEOISO transmitted to Plaintiff a

copy of the EEO Report of Investigation, as well as a notice of her right to request a hearing before

an EEOC administrative judge or final agency decision.  (Ex. 2 at ¶14; Declaration Ex. E).

31.    The EEO investigator's summary lacks any references to race, sex, or disability as

a basis for Plaintiff's claims.  (Declaration Ex. E at pp. 10-23).

32.    Plaintiff requested a hearing before an EEOC administrative judge, and on

December 5, 2017, NEEOISO transmitted the EEO investigative file to the EEOC.  (Ex. 2 at ¶15;

Declaration Ex. F).

33.    Prior to a hearing in front of or decision by the EEOC Administrative Judge,

Plaintiff submitted a written request for "immediate Dismissal without an Agency Ruling," stating,

"We intend to promptly file in Federal Court.  We do not want the possibility of the jury being prejudiced of an Agency Ruling."  (Ex. 2 at ¶16; Declaration Ex. G).

34.     On February 14, 2019, the EEOC Administrative Judge dismissed the case "pursuant to Complainant's withdrawal of her complaint from the administrative process."  (Ex. 2 at ¶17; Declaration Ex. H).

35.     On February 21, 2019, the Postal Service notified Plaintiff that it agreed with the EEOC Administrative Judge and had decided to implement her decision.  (Ex. 2 at ¶18; Declaration Ex. I).

## III.    QUESTIONS PRESENTED

A.     Should Plaintiff's Title VII claims for race- and sex-based discrimination, retaliation, and hostile work environment be dismissed under Rule 12(b)(6) for failure to exhaust?

B.     Should Plaintiff's Rehabilitation Act claims for disability discrimination and hostile work environment be dismissed under Rule 12(b)(6) for failure to plead plausible claims and failure to exhaust?

C.     Should Plaintiff's ADA retaliation claim be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction?

D.     Should Plaintiff's wrongful termination claim be dismissed under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to exhaust administrative remedies?

## IV.    STANDARD OF REVIEW

### A.    <u>Legal Standard Under Rule 12(b)(1).</u>

Under Fed. R. Civ. P. 12(b)(1), the Court may dismiss a complaint based on lack of subject matter jurisdiction.  "It is well settled that the United States, as sovereign, is immune from suit except as it consents to be sued and that the terms of its consent to be sued in any court define the

court's jurisdiction to entertain the action." *Three-M Enters., Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Any governmental waiver of sovereign immunity must be unequivocal. *See, e.g., Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Such waivers are strictly construed. *See, e.g., Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Williams*, 514 U.S. 527, 531 (1995).

To establish the Court's jurisdiction over the United States, a plaintiff must do more than show the subject matter of the litigation is within the general competence of federal courts. *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (citing *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)). A plaintiff must also identify a specific statutory waiver of the government's sovereign immunity with respect to the claims made in the complaint. *See Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (the burden is on plaintiff to find and prove an explicit waiver of sovereign immunity). If a plaintiff cannot establish that the Court has jurisdiction, a complaint must be dismissed.

**B.    Legal Standard Under Rule 12(b)(6).**

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of facts, taken as true, to state a claim that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556

U.S. at 678. As stated by the Tenth Circuit, "plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (internal quotations omitted). Where a legal conclusion is couched as a factual allegation, there is no presumption the allegation is true. *See Bell Atl. Corp.*, 550 U.S. at 555-56. Thus, "[I]n examining a complaint under Rule 12(b)(6), [the Court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. The Court should not accept legal conclusions or factual allegations as true if they contradict information contained in documents attached to the complaint or "other properly considered document[s]." *GFF Corp.*, 130 F.3d at 1385.

Generally, when a motion to dismiss raises an affirmative defense that is not apparent on the face of the pleadings, and outside matter is presented and accepted, courts will treat the motion as if it were one for summary judgment. *See Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019). However, if failure to exhaust appears on the face of the complaint, it may be raised in a motion to dismiss. *Id.* Additionally, "the Court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity." *Krehbiel*, 2019 WL 3387049, at *2; *see also Dunmars*, 2019 WL 3817958, at *3 ("administrative complaints are central to [Plaintiff's] case because he would not be able to recover without them"). Until recently, failure to exhaust administrative remedies was considered a jurisdictional question subject to a motion to dismiss under Rule 12(b)(1). *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). In *Lincoln* the Tenth Circuit concluded that failure to exhaust must instead be asserted as an affirmative defense under Rule 12(b)(6). *Id*; *see also*

*Brown v. Keystone Learning Servs.*, No. 17-2211-JAR, 2018 WL 6042592, at *4 (D. Kan. Nov. 19, 2018).[3]

## V.    ARGUMENTS AND AUTHORITIES

### A.    The Court Should Dismiss Plaintiff's Title VII Claims (Counts I, II, IV) For Failure To Exhaust Administrative Remedies.

In Counts I, II, and IV of the Complaint, Plaintiff asserts claims for discrimination, retaliation, and hostile work environment under Title VII. These claims should be disposed of under Rule 12(b)(6) because while Plaintiff filed an EEO Complaint, it did not contain facts concerning the discriminatory and retaliatory actions underlying the Title VII claims she brings in this case. Nor did the scope of the administrative investigation cover such claims.

### 1.    The legal standard for failure to exhaust remedies.

As this Court has noted, a party "may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances." *Almond v. Unified Sch. Dist. No. 501*, 749 F. Supp. 2d 1196, 1204 (D. Kan. 2010), *aff'd*, 665 F.3d 1174 (10th Cir. 2011). Instead, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Helmrichs v. Potter*, 533 F. Supp. 2d 1137, 1146 (D. Kan. 2008) (internal quotation marks omitted). Employees must

---

[3] *Lincoln* involved a discrimination claim under Title VII against a *private* employer, to whom principles of sovereign immunity do not apply. In two unpublished decisions, the Tenth Circuit has since applied *Lincoln* to discrimination claims against federal employers without analysis of sovereign immunity. *See, e.g., Bryant v. U.S. Postal Serv.*, 741 F. App'x 602, 603-04 (10th Cir. 2018); *Cirocco*, 768 F. App'x at 857. In a footnote in *Cirocco*, however, the Tenth Circuit rejected an argument that *Lincoln* does not apply to discrimination claims against the United States by briefly noting that *Lincoln* cited by example a Title VII case involving a federal employee and that other Circuits apply the same rule to federal employment cases. *See Cirocco*, 768 App'x at 857. This conclusion is subject to debate and nonbinding, but for purposes of this motion, Defendant assumes without conceding that *Lincoln* applies, as it does not affect the outcome.

exhaust administrative remedies under both Title VII and the Rehabilitation Act. *See Ransom v. U.S. Postal Serv.*, 170 F. App'x 525, 527 (10th Cir. 2006).

Courts evaluation exhaustion engage in a two-step exhaustion analysis. At the first step, the Court looks to whether the plaintiff timely filed an EEO complaint. *Helmrichs*, 533 F. Supp. 2d at 1145 (citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007)). If an EEO complaint has been timely filed, the Court proceeds to the second step to determine the scope of the allegations raised in the EEO complaint. An employee's claim in federal court is "generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* at 1145-46.

Courts must liberally construe EEO complaints to determine whether a claim has been exhausted. *Id.* at 1146; *Brown*, 2018 WL 6042592, at *4. However, the Court's inquiry is "limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (emphasis in original); *see also Smith*, 904 F.3d at 1164 ("ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]") (internal quotations omitted).

The boxes checked by the employee relating to the types of discrimination alleged (e.g., race, color, religion, sex, age, disability, etc.) and the narrative portion set forth by the employee are the relevant considerations in the second step of the exhaustion analysis. *See Kear v. Kohl's Dep't Stores, Inc.*, No. 12-CV-1235-JAR-KGG, 2013 WL 424881, at *3 (D. Kan. Feb. 4, 2013); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). It is not dispositive if an employee fails to check a box on the face of the EEO complaint, but it nevertheless leads to a

13

presumption that the employee did not assert a claim on that basis. *See id.* This presumption may be rebutted if the narrative portion of the employee's EEO complaint "clearly sets forth the claim that was left unchecked." *Id.*

> ### 2. Plaintiff's Title VII claims do not fall within the scope of an investigation which would reasonably grow out of the charges Plaintiff actually made in her EEO Complaint.

In the EEO Complaint, Plaintiff did not check the boxes for race or sex, and the narrative provided by Plaintiff does not rebut the presumption against Plaintiff asserting race and sex-based claims. The narrative portion of the EEO Complaint does not contain facts regarding her race, sex, or any other status protected under Title VII.

Rather, the EEO Complaint focuses on Plaintiff's ankle injury and her supervisor's response to it. Plaintiff alleged that she injured herself, and her supervisor was harsh with her. She claimed that she told her union representative about it, and that after doing so her supervisor took various actions against her, including cutting her hours, sending her home from work for days in a row, speaking to her harshly and condescendingly, isolating her from her coworkers, pretending she was invisible, and giving her the run around when she was asking for her prescription card. Plaintiff asserted that these actions were retaliatory.

Plaintiff also claimed that certain other employees told her that Defendant could not prove that Plaintiff was injured on the job. Finally, Plaintiff asserted that she was hurriedly evaluated (using a 60-day performance evaluation though she had not been employed for 60 days), and then terminated (before 45 days after the injury) in order to avoid paying workers compensation. None of these allegations has anything to do with Plaintiff's race or sex.

No investigation into race or sex-based discrimination, retaliation, or harassment could reasonably be expected to flow from the EEO Complaint. The Court should therefore dismiss

Plaintiff's Title VII claims (Counts I, II, and IV) for failure to exhaust administrative remedies under Rule 12(b)(6).

### 3. The administrative record confirms that race and sex-based claims were not part of the EEO investigation.

To the extent Plaintiff disputes that Defendant's exhaustion argument and claims that her Title VII claims were part of the EEO investigation, the Court should still enter summary judgment based upon the relevant portions of the record from the investigation. The record conclusively establishes that no investigation into Plaintiff's race or sex-based claims under Title VII took place.

Before describing the administrative proceedings in this case, it bears describing the procedural requirements for administrative claims of employment discrimination in the federal sector. The Code of Federal Regulations provides the procedural requirements. *See* 29 C.F.R. §§ 1614.104–1614.110; *Hamilton v. Dep't of Veterans Affairs*, No. 16-2101-DDC-JPO, 2016 WL 7326280, at *6 (D. Kan. Dec. 16, 2016) (involving Title VII and Rehabilitation Act claims). In *Hamilton*, the Court summarized the regulations as follows:

> These regulations require a claimant to contact a counselor within 45 days of the alleged discriminatory action(s) to attempt informal resolution of the matter. *Id*. § 1614.105(a)(1). If the claimant does not resolve the complaint through informal counseling, the claimant must file a formal complaint of discrimination within 15 days of receiving written notice from the counselor of the plaintiff's right to file a complaint. *Id*. § 1614.106(b). The formal complaint must describe the actions that form the basis of the complaint. *Id*. § 1614.106(c). But the complaint cannot assert claims that the claimant did not raise in the pre-complaint counseling. *Id*. § 1614.106(b)(1). A claimant's failure to raise a claim or an issue in an administrative complaint bars the claimant from raising that claim or issue in a subsequent judicial action. *See Mackenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) ("A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." (citations omitted)).

> The regulations provide the agency 180 days to complete its investigation and provide the claimant a copy of the investigate file. 29 C.F.R. §§ 1614.106(e)(2), 1614.108(e)–(f). The claimant has 30 days from the date of receiving the investigation file either to: (1) request a hearing and decision from an administrative

judge; or (2) request an immediate final agency decision ("FAD"). *Id*. § 1614.108(f).

After a claimant receives a FAD, the claimant has two options. The claimant either can: (1) file an appeal of the FAD within 30 days of receiving the decision; or (2) file a judicial complaint within 90 days of receiving the FAD. *Id*. §§ 1614.401, 1614.402, 1614.407(a).

*Hamilton*, 2016 WL 7326280, at *6-7. During the 180-day investigative period, agencies also "are supposed to acknowledge receipt of the complaint in writing … [and] send the complainant a second letter (commonly known as an 'acceptance' letter), stating the claim(s) asserted and to be investigated." *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) (internal quotations omitted) (citing EEOC Management Directive 110 (MD-110)).

The record in this case shows the following: Plaintiff initiated contact with an EEO representative on April 7, 2017. On July 6, 2017, after Plaintiff had engaged in pre-complaint counseling, she was given a Notice of Right to File describing the claims as to which she could file a formal complaint. The claims had nothing to do with Plaintiff's race or sex.

On August 23, 2017, after receiving Plaintiff's formal EEO Complaint, the agency issued Plaintiff an Acceptance For Investigation, identifying the claims that had been accepted for investigation. The accepted claims had nothing to do with Plaintiff's race or sex. In fact, the ADR Specialist's Inquiry Report, which was included with the Acceptance For Investigation, reflects that during pre-complaint counseling Plaintiff did not allege discrimination, harassment, or retaliation based upon her race or sex. The Acceptance For Investigation specifically advised Plaintiff of her right to object in writing if Plaintiff did not agree with the accepted issues. She did not do so.

On September 8, 2017, the EEO Investigator sent Plaintiff a letter which also identified the issues that would be investigated, and it did not reference race or sex. The investigator's letter

also specifically advised Plaintiff that if she did assert such claims, she would need to explain why. Based upon the investigative summary, Plaintiff never did so.

Plaintiff's claims were investigated, and at the conclusion of the investigation the EEO investigator summarized the investigation. Plaintiff was provided a copy of the same. The investigative summary lacks any reference whatsoever to discrimination, hostile work environment, or retaliation based upon Plaintiff's race or sex.

In sum, Plaintiff did not file an EEO Complaint based on race or sex, the agency did not accept such issues for investigation, Plaintiff was apprised of her rights to disagree and failed to do so, and the ensuing investigation did not cover race or sex-based claims. Plaintiff failed to exhaust her Title VII claims, and, to the extent the Court considers the additional records, summary judgment should be entered.

**B.**    **The Court Should Dismiss The Rehabilitation Act Claims (Counts III And IV) For Failure To State A Claim.**

In Counts III and IV of the Complaint, Plaintiff asserts that Defendant failed to accommodate her disability and created a hostile and abusive work environment in violation of the Rehabilitation Act. The Court should dismiss these claims for two reasons. First, in her Complaint, Plaintiff has failed to plead plausible claims based upon a disability within the meaning of the Rehabilitation Act. Second, even if Plaintiff properly pled claims under the Rehabilitation Act, she failed to exhaust them at the administrative level.

**1.**    **Plaintiff has failed to plead plausible Rehabilitation Act claims.**

The Rehabilitation Act prohibits federal employers from discriminating on the basis of disability or retaliating for protected action, and it imposes a duty on federal employers to provide reasonable accommodations to disabled employees. *See* 29 U.S.C. § 794(a); *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007); *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1195 (10th

Cir. 2017).  If the duty to accommodate is not satisfied, a disabled employee may bring a failure-to-accommodate claim under the Rehabilitation Act.  *Id.*

Though the Rule 12(b)(6) standard "does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  *Khalik*, 671 F.3d at 1192.  One of the prima facie elements of a failure-to-accommodate claim is that the employee is *disabled*.  *See Sanchez*, 870 F.3d at 1195 ("To state a failure-to-accommodate claim, Sanchez must allege that he: (1) is disabled; (2) is 'otherwise qualified'; and (3) requested a plausibly reasonable accommodation").  But not every injury or impairment is afforded protection under the Rehabilitation Act.  Rather, an employee is disabled for purposes of the Rehabilitation Act only if she has a physical or mental impairment that substantially limits one or more of her major life activities, a record of such impairment, or is regarded as having such an impairment.  *See Humbles v. Principi*, 141 F. App'x 709, 712 (10th Cir. 2005).

### a.   *Plaintiff fails to plead a disability within the meaning of the Rehabilitation Act.*

The Complaint is devoid of any factual allegations to support a conclusion that she was disabled.  In Count III, Plaintiff makes the conclusory assertion that "Defendant has discriminated against Plaintiff by denying her reasonable accommodation for her disabilities, including occupational stress."  Doc. 1 at p. 7.  Elsewhere Plaintiff alleges that she "had an accident; causing injury to herself," Doc. 1 at p. 4.  However, neither a passing reference to a nondescript "injury," nor a conclusory allegation of "occupational stress," is sufficient to state a plausible claim for a disability within the meaning of the Rehabilitation Act.

First, Plaintiff does not articulate the nature of her injury or its severity, whether it actually resulted in a physical or mental impairment, or whether the impairment substantially limits one or

more of her major life activities, much less whether and how that injury relates to "occupational stress."[4]  Indeed, the Complaint undercuts any argument that Plaintiff was disabled, for it states that Plaintiff received medical treatment and returned to work the same day as her injury.  In order for Plaintiff's claims to survive this motion, the Court would therefore need to supply additional facts to round out Plaintiff's Complaint, something the Court should not do.  *See Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 626 (10th Cir. 2018), *cert. denied sub nom. Tatten v. City & Cty. of Denver, Colo.*, 139 S. Ct. 826 (2019) ("even for pro se litigants afforded liberal construction, courts may not 'supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf'").  The mere fact of injury, even if assumed true, is insufficient to state a plausible disability-based discrimination claim for purposes of the Rehabilitation Act.

Second, the passing allusion to "occupational stress," without any explanation of its relation to Plaintiff's injury, is insufficient to state a plausible disability claim.  Again, the Complaint does not allege an impairment, any life activities that are impacted, or how such activities are substantially limited.  To the extent Plaintiff's theory is that occupational stress is an impairment, her claims still fails because there are no allegations regarding any limitations on any life activities, that she was otherwise qualified, or that Defendant was aware that Plaintiff claimed

---

[4] *Cf. Jackson v. Bd. of Cty. Comm'rs of Cty. of Sherman Cty., Kan.*, No. 17-2511-DDC-GEB, 2018 WL 3122176, at *10 (D. Kan. June 26, 2018) (denying motion to dismiss where complaint alleged plaintiff "sustained a three-part break of her ankle that has required multiple surgeries and physical therapy. She alleges that a person who experiences a trimalleolar fracture—like the one plaintiff sustained—can require as long as two years to recover and can sustain permanent changes in her abilities to perform certain activities. Plaintiff alleges that she suffers from daily chronic pain and arthritis in her leg that will continue for the rest of her life. Plaintiff asserts that her physical and psychological impairments substantially limit 'the major life activities of, including, but not limited to, working, sleeping, lifting, walking, bending and concentrating.' … Plaintiff also alleges that her ankle impairment is neither transitory nor minor").

such a disability.  Defendant could not discriminate based on an impairment of which it was unaware.  Furthermore, courts have held that occupational or work-related stress is not itself a disability for purposes of the Rehabilitation Act or the ADA.  *See, e.g., Litman v. Mabus*, No. 1:13-CV-43 WLS, 2014 WL 5428643, at *6 (M.D. Ga. Oct. 22, 2014), *aff'd sub nom. Litman v. Sec'y, of the Navy*, 703 F. App'x 766 (11th Cir. 2017) (plaintiff's "allegations that Defendants 'deliberately caus[ed] his disabilities, including occupational stress, elevated diabetes and high blood pressure' are insufficient to state a disability-based discrimination claim under the Rehabilitation Act"); *Johnson v. Special Sch. Dist. of St. Louis Cty.*, No. 4:18CV53JCH, 2018 WL 2163647, at *11 (E.D. Mo. May 10, 2018) ("occupational stress is not a disability as defined by the Rehabilitation Act or the ADA, but rather a factor that could, arguably, cause a disability"); *Fricke v. E.I. Dupont Co.*, 219 F. App'x 384, 389 (6th Cir. 2007) (workplace stress does not rise to the level of disability under ADA).

### b.    *Plaintiff fails to plead a hostile work environment based on disability.*

In Count IV, Plaintiff makes the cursory claim that "Defendant's conduct as alleged above constitutes a hostile and abusive working environment in violation of … the Rehabilitation Act." Doc. 1 at p. 8.  It is unclear whether Plaintiff is seeking to assert a discriminatory or retaliatory hostile work environment.  However, given that Plaintiff generally claims that Defendant discriminated and retaliated against her, it is conceivable she is attempting to bring both claims. Plaintiff has failed to state a plausible claim for either.[5]

---

[5] It appears unclear whether discriminatory and retaliatory hostile work environment claims under the Rehabilitation Act/ADA are cognizable in the Tenth Circuit.  *See, e.g., Brown v. Principi*, 326 F. Supp. 2d 1193, 1198 (D. Kan. 2004) (disability-based discriminatory hostile work environment); *Roecker v. Brennan*, No. 15-7201-DDC-JPO, 2017 WL 445504, at *10 (D. Kan. Feb. 2, 2017) (retaliatory hostile work environment).  However, for the sake of argument, Defendant assumes without conceding that such claims are cognizable.

A hostile work environment claim must be for more than "general harassment." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017). To establish a discriminatory hostile work environment claim, Plaintiff must show that she was *disabled*, that she was subject to unwelcome harassment, that the harassment was *based upon her alleged disability*, and that due to the severity or pervasiveness of the harassment, a term, condition, or privilege of the plaintiff's employment was altered and created an abusive working environment. *See Callahan v. Commc'n Graphics, Inc.*, 657 F. App'x 739, 746-47 (10th Cir. 2016). This Court has held that to establish a retaliatory hostile work environment claim, a plaintiff must show incidents of harassment following protected activity that "render the workplace … permeated with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *See Nordike v. Verizon Bus., Inc.*, No. 12-2686-JAR, 2014 WL 4749185, at *16 (D. Kan. Sept. 24, 2014) (emphasis added).

As discussed above, Plaintiff has not properly pled that she was disabled within the meaning of the Rehabilitation Act. She has also not pled any facts to show that the purported harassment was based upon that disability. To the contrary, in paragraphs 17 and 18 of the Complaint, Doc. 1 at p. 5, Plaintiff ties her allegations of harassment specifically to her race and sex, and not disability. Moreover, Plaintiff has not pled facts to show that the alleged harassment rendered her work permeated with discriminatory intimidation, ridicule, and insult of a severe or pervasive nature. For these reasons, the Court should dismiss Plaintiff's Rehabilitation Act discrimination and hostile work environment claims based upon disability for failure to state a claim.

### 2.    Plaintiff did not exhaust her failure-to-accommodate claim.

Even if Plaintiff had pled plausible Rehabilitation Act claims, the Court should still dismiss them for failure to exhaust.  Similar to the Title VII exhaustion analysis above, while Plaintiff filed a formal EEO Complaint, it did not assert a failure-to-accommodate claim and did not contain facts concerning the discrete incidences of alleged discrimination or hostile work environment. Nor indeed did the scope of the administrative investigation cover such claims.

### a.    *Plaintiff did not allege failure-to-accommodate in her EEO Complaint.*

In Count III of the Complaint, Plaintiff alleges that Defendant "den[ied] her reasonable accommodation for her disabilities … in violation the Rehabilitation Act."  Doc. 1 at pp. 7-8.  In her EEO Complaint, however, Plaintiff did not check the box for disability, giving rise to a presumption that Plaintiff did not assert a claim for disability discrimination.  The narrative portion of her EEO complaint fails to rebut this presumption because it also does not set forth a failure-to-accommodate claim.  *See Gunnell*, 152 F.3d at 1260 (Title VII case "finding presumption was not rebutted by the text of [plaintiff's] claim because the prose she used to describe her claim did not clearly set forth a sexual discrimination claim").

The EEO Complaint only states that she suffered an injury and appears to describe temporary work restrictions from her doctor during recovery.  Nowhere in the remainder of Plaintiff's narrative portion, however, did she state that she was *disabled* as a result of the injury, that she *requested an accommodation* for a disability, that Defendant *failed to accommodate* her request, or in any other way allege disability discrimination.  Rather, as noted above, Plaintiff's narrative section is dedicated almost entirely to Plaintiff's claims that her supervisor mistreated her when she was injured and then, when Plaintiff complained to her union representative, cut her hours, sent her home for days, spoke harshly and condescendingly, told other employees not to

talk to her and pretend she was invisible, gave her the "run around" when she asked for a prescription card, and ultimately terminated Plaintiff to avoid paying workers compensation benefits.  None of these allegations goes toward a failure to accommodate claim.

An investigation into whether Defendant failed to accommodate Plaintiff therefore cannot "reasonably be expected to follow" her EEO complaint.  *See Jones*, 502 F.3d at 1187; *see also Lara v. Unified Sch. Dist. # 501*, 350 F. App'x 280, 285 (10th Cir. 2009) (affirming dismissal of ADA failure to accommodate claim where the charge alleged discrimination but "did not allege any failure to accommodate or mention his failure-to-accommodate claim in the text portion of his administrative charge").  The Court should dismiss Plaintiff's failure to accommodate claim under the Rehabilitation Act (Count III) for failure to exhaust.

### b.   *Plaintiff did not allege severe or pervasive harassment based upon a disability in her EEO Complaint.*

In Count IV of the Complaint, Plaintiff alleges that "Defendant's conduct as alleged above constitutes a hostile and abusive working environment in violation of … the Rehabilitation Act." Doc. 1 at p. 8.  Plaintiff's EEO Complaint does not use the phrase hostile work environment, but more importantly, nowhere in the EEO Complaint did Plaintiff assert that she was disabled, that she engaged in EEO activity based on such a disability,[6] that she was harassed because of it, or that any of the conduct alleged of Defendant was in any way related to a disability.  The EEO Complaint therefore lacks facts to support a hostile work environment claim based on "harassment [that] stemmed from disability-related animus" or that followed protected activity that rendered

---

[6] Plaintiff's allegations were only that she was unsatisfied with her supervisor's reaction to her injury, and that she reported this to her union representative.  Assuming for the sake of argument only that reporting to a union representative constitutes protected activity under the Rehabilitation Act, it in no way appears to have been related to a claim of disability-based discrimination, and Plaintiff does not allege otherwise.

the "workplace … permeated with discriminatory intimidation, ridicule, and insult," much less that it was severe or pervasive.  *See Schlecht v. Lockheed Martin Corp.*, 626 F. App'x 775, 779 (10th Cir. 2015); *Nordike*, 2014 WL 4749185, at *16.  An investigation into whether Plaintiff was subject to a hostile work environment under the Rehabilitation Act cannot reasonably be expected to follow from her EEO Complaint, and the Court should dismiss Count IV for failure to exhaust.

> ### c.    *No administrative investigation was actually made into disability-based claims.*

To the extent Plaintiff disagrees with Defendant's exhaustion argument and contends that her Rehabilitation Act claims did fall within the scope of the EEO investigation, the Court should still enter summary judgment based upon the relevant portions of the record from the investigation. As with the Title VII claims above, the record conclusively establishes that there was in fact no investigation into the disability-based claims in Plaintiff's Complaint.

As detailed above, the record shows that Plaintiff initiated contact with an EEO representative and engaged in pre-complaint counseling.  After that was complete, Plaintiff was given a Notice of Right to File, which described the claims as to which Plaintiff could file a formal complaint.  The Notice of Right to File specifically identified disability as one of the types of discrimination Plaintiff could pursue.  The Notice indicated, however, that Plaintiff had been counseled that she would need to submit documentation of her disability, and that Plaintiff had failed to do so.

Notwithstanding her right to pursue a disability-based claim, when Plaintiff filed her formal EEO Complaint she did not select disability as a type of discrimination alleged, and she did not include any facts or allegations as to a disability, much less a denial of accommodation. Recognizing this, on August 23, 2017, the agency provided Plaintiff with an Acceptance For Investigation, which specifically excluded disability discrimination from the claims accepted for

24

investigation (i.e., "It is noted, although during pre-complaint counseling you alleged, Disability (Right Ankle and Leg) as a bases for discrimination … you did not re-allege this purview on your … Formal Complaint").  The agency further expressly advised Plaintiff of her right to object in writing if Plaintiff did not agree with the accepted issues.  Plaintiff failed to do so.

The EEO Investigator then sent Plaintiff a letter on September 8, 2017, that also identified the issues that would be investigated.  The description in that letter did not reference disability or failure to accommodate as an issue for investigation.  However, the letter specifically advised Plaintiff that if she did assert a disability-based claim, she would need to explain why.  Plaintiff did not do so.

Plaintiff's claims were investigated, and at the conclusion of the investigation the EEO investigator provided an investigative summary which lacks any reference whatsoever to discrimination or hostile work environment based upon Plaintiff's disability or denial of a request for accommodation.

In sum, while Plaintiff apparently raised disability during pre-complaint counseling, she abandoned that basis when she filed her formal EEO Complaint and omitted disability or failure to accommodate as a basis for her claims.  It cannot be said that Plaintiff was unaware; she was specifically notified that the agency was excluding disability from its investigation and apprised of her right to disagree in writing on August 23, 2017.  She did not do so then, nor did she attempt to do so in response to the EEO Investigator's letter of September 8, 2017.  Consequently, the ensuing investigation did not cover failure to accommodate or disability based hostile work environment.  Plaintiff failed to exhaust her Rehabilitation Act claims, and to the extent the Court considers the additional records, summary judgment should be entered.

**C.**   **The Court Should Dismiss Plaintiff's ADA Claim (Count II) For Lack Of Jurisdiction.**

In Count II of the Complaint, Plaintiff asserts that Defendant retaliated against her in violation of the ADA.  The ADA prohibits an employer from discriminating against an employee because of his or her disability or for opposing acts unlawful under the ADA or participating in an EEO proceeding.  *See* 42 U.S.C. §§ 12112(a), 12203(a); *Melin v. Verizon Bus., Inc.*, 595 F. App'x 736, 737 (10th Cir. 2014).  The ADA, however, does not apply to federal employees because "the federal government is not considered an 'employer' under the ADA."  *Williams v. Brennan*, 285 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 42 U.S.C. § 12111(5)(B)(i); *See also Parker v. Berryhill*, No. 17-1063-DDC, 2017 WL 4697511, at *3 (D. Kan. Oct. 19, 2017) (ADA does not include a waiver of sovereign immunity).  Rather, the Rehabilitation Act incorporates the anti-retaliation provision set forth in the ADA and is the exclusive remedy for federal employees alleging disability-based discrimination.  *See* 29 U.S.C. § 791(f); *Vidacak v. Potter*, 81 F. App'x 721, 723 (10th Cir. 2003).  The Court therefore lacks subject matter jurisdiction over Plaintiff's ADA retaliation claim and should dismiss the same under Rule 12(b)(1).[7]

**D.**   **The Court Should Dismiss Plaintiff's Wrongful Termination Claim (Count V).**

In Count V of the Complaint, Plaintiff asserts that Defendant wrongfully terminated her. Plaintiff does not identify any specific legal authority for such a claim against Defendant.  It is unclear if it is a continuation of her claims under Title VII, the Rehabilitation Act, and the ADA, a constitutional claim, or a state law tort claim.  This alone is cause for dismissal.  *See United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930-31 (10th Cir. 1996) (plaintiff

---

[7] Allowing Plaintiff to amend her Complaint to assert a retaliation claim under the Rehabilitation Act would be futile because, as articulated above, Plaintiff failed to exhaust administrative remedies.

must establish both that the Court has jurisdiction over the types of claims brought and that United States has consented to be sued by identifying an unequivocal statutory waiver of sovereign immunity).

However, assuming Plaintiff is pursuing any one of those theories, the claim cannot survive dismissal.  First, any claim for wrongful termination under Title VII, the Rehabilitation Act, or the ADA fails for reasons articulated above.

Second, a constitutional claim for denial of "Due Process" fails for lack of subject matter jurisdiction.  Constitutional tort claims cannot stand against the United States or its agencies.  *See James v. U.S. Coast Guard*, No. 5:18-CV-04063-HLT, 2019 WL 2250219, at *4 (D. Kan. May 23, 2019) (citing *F.D.I.C.*, 510 U.S. at 486).  Furthermore, to the extent Count V can be construed as a claim for damages in excess of $10,000 in relation to the Constitution or an express or implied contract with the United States, this Court lacks jurisdiction under The Tucker Act, 28 U.S.C. § 1491.  *See Se. Kan. Cmty. Action Program Inc. v. Sec'y of Agric. of U.S.*, 967 F.2d 1452, 1455 (10th Cir. 1992).

Third, to the extent Plaintiff is attempting to assert a state law tort claim, it is barred by sovereign immunity.  Kansas law does recognize a claim for retaliatory discharge for filing a workers compensation claim, but it is a tort.  *See, e.g., Hill v. State*, 448 P.3d 457 (Kan. 2019).  If Plaintiff is seeking to pursue such a claim, this Court lacks jurisdiction, as Plaintiff has not established that she exhausted her administrative remedies under the Federal Tort Claims Act, nor has she sued the proper party.  *See Hudson v. Cahill*, No. 15-CV-2319-JAR, 2015 WL 6738714, at *2 (D. Kan. Nov. 4, 2015).

## VI.    CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety or, alternatively, enter summary judgment against Plaintiff on all her claims.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney
District of Kansas

s/ Luke P. Sinclair
LUKE P. SINCLAIR
Assistant United States Attorney
Ks. S. Ct. No. 23709
290 Federal Bldg.
444 SE Quincy Street
Topeka, Kansas 66683
PH: (785) 295-2850
FX: (785) 295-2853
Email: luke.sinclair@usdoj.gov
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, I electronically filed the foregoing with the Clerk of the Court by uploading it to the CM/ECF system which will send a notice of electronic filing to all parties receiving CM/ECF notifications in this case.

s/ Luke P. Sinclair
LUKE P. SINCLAIR
Assistant United States Attorney