# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ASYA KHALIFAH,

    Plaintiff,

v.

MEGAN J. BRENNAN,
Postmaster General

    Defendant.

Case No. 19-CV-2240-JAR-KGG

## MEMORANDUM AND ORDER

This dispute arises out of Plaintiff Asya Khalifah's claim of employment discrimination and retaliation by her former employer, Defendant Megan J. Brennan, Postmaster General, under Title VII of the Civil Rights Act of 1964 ("Title VII"). Before the Court is Defendant's Motion to Dismiss for failure to state a claim and lack of jurisdiction, or in the alternative for summary judgment (Doc. 9).[1] Defendant moves to dismiss Plaintiff's retaliation and hostile work environment claims based on Plaintiff's failure to exhaust administrative remedies. The motion is fully briefed, and the Court is prepared to rule. For reasons discussed below, Defendant's motion to dismiss is **granted.** Defendant's motion for summary judgment is **denied as moot.**

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[1] Plaintiff listed five counts against Defendant in her Complaint (Doc. 1), but withdrew Counts I, III, and V, and portions of Counts II and IV, in her response brief to this motion (Doc. 22). Plaintiff withdrew Count I: Racial discrimination in violation of Title VII; Count III: Violation of the Rehabilitation Act, 29 U.S.C. § 701 et. Seq.; and Count V: Wrongful termination. Plaintiff also withdrew the portions of Counts II and IV that claimed under the Americans with Disabilities Act, and the Rehabilitation Act, respectively. Accordingly, the Court does not address these claims, nor Defendant's motion to dismiss for lack of subject matter jurisdiction as to Count V and a portion of Count II.

level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[3] *Id.* at 570.

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[9] *Id.* at 678–79.

[10] *Id.* at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

A plaintiff's failure to exhaust administrative remedies is no longer a jurisdictional bar to suit, but instead "permits a defendant only an affirmative defense."[12] Analysis of administrative exhaustion under a 12(b)(6), rather than the 12(b)(1) standard, is a relatively new procedure in the Tenth Circuit. *Lincoln* overturned nearly forty years of precedent that "exhaustion of administrative remedies is a jurisdictional prerequisite to suit,"[13] and held "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."[14]

Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,'"[15] "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[16]

## II. Factual Allegations

The following facts are alleged in Plaintiff's Complaint and are assumed to be true for the purposes of deciding Plaintiffs' motion to dismiss.

---

[11] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *Brown v. Keystone Learning Servs.*, No. 19-3060, 2020 WL 633213, at *8 (10th Cir. Feb. 11, 2020) (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018).

[13] *Lincoln*, 900 F.3d at 1181 (citing and abrogating *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)) (internal quotations omitted).

[14] *Lincoln*, 900 F.3d at 1185.

[15] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1201, 1215 (10th Cir. 2007)).

[16] *Id.* (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Plaintiff is an African American woman. She was employed by the United States Postal Service ("USPS") as a City Carrier Assistance ("CCA") Employee pursuant to an agreement between the USPS and the American Federation of Labor and Congress of Industrial Organizations National Association of Letter Carriers. Plaintiff was so employed on March 2, 2017. On that date, she was transferred from the Monticello Post Office in Shawnee, Kansas, to the Shawnee Mission Main Post Office in Mission, Kansas.

Also on March 2, 2017, Plaintiff had an accident during the course of her employment and suffered an injury. She immediately reported the injury to her supervisor, Kelly Herrera. Plaintiff received medical attention and returned to work on the day of the injury. When she returned, Herrera began to subject her to a hostile work environment by not including her among colleagues in staff meetings, denying her training, denying her physician-ordered medical requests, yelling at her, and subjecting her to public ridicule. Herrera did not subject white employees or other female employees to this same treatment. Plaintiff argues this created disparate treatment based upon race and sex.

Following Herrera's "yelling tirade,"[17] Plaintiff made an Equal Employment Opportunity ("EEO") complaint alleging discrimination, retaliation, and hostile work environment. Plaintiff alleged the USPS' discriminatory and retaliatory treatment caused Plaintiff to suffer from Major Depression and Generalized Anxiety Disorder, which causes her to suffer panic attacks. Additionally, this treatment led to denial of work opportunities for Plaintiff.

In or around March 2017, Plaintiff's doctor recommended Plaintiff could return to work as long as she performed only sitting-tasks and did not drive a vehicle.

---

[17] Doc. 1 at 5.

On March 30, USPS did not accommodate Plaintiff with her medically-ordered requests and proposed her termination. The USPS, through Herrera, denied Plaintiff job tasks that were available to her and within her medically-authorized accommodations. Further, Herrera made a false evaluation of Plaintiff's job performance, concluding it was inadequate. The USPS endorsed Herrera's proposal and terminated Plaintiff's employment.

*EEO Complaint of Discrimination in the Postal Service*

The Court also considers Plaintiff's EEO complaint in deciding Defendant's motion to dismiss. The Court may consider the EEO complaint without converting the motion to one for summary judgment because it is referred to in Plaintiff's Complaint.[18] Further, it is central to Plaintiff's claim because the EEO complaint contains factual allegations upon which Plaintiff relies, and because failing to file an EEO complaint is an affirmative defense to bringing a Title VII suit in federal court.[19]

The "EEO Complaint of Discrimination in the Postal Service" form includes a field with checkboxes to choose "Type of Discrimination You are Alleging" and instructions to select all boxes that apply. Although there are checkboxes for race, color, religion, national origin, sex "(Specify Male, Female)," sex "(LGBT)," age, retaliation, disability and genetic information, Plaintiff only checked the "Retaliation" box.[20]

The EEO complaint form also includes a field with instructions to "[e]xplain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color,

---

[18] Plaintiff did not attach the EEO complaint to her federal Complaint. Doc. 1. Defendant attached the EEO complaint as an exhibit to its memorandum in support of its motion to dismiss, which Plaintiff does not contest. Doc. 10-2 at 1–2. Nor does Plaintiff contest the EEO complaint's authenticity.

[19] *Brown*, 2020 WL 633213, at *8.

[20] Doc. 10-2 at 1.

religion, sex, age (40+), national origin, genetic information, disability, or retaliation for participation in a protected EEO activity."[21] It further instructs the complainant to use additional pages if necessary. Plaintiff used the space provided below the prompt and continued on to the back of the form. In this narrative portion, Plaintiff alleged that she was injured while on duty for the USPS and as a result received medical care including an MRI of her ankle and saw an "ortho surgeon."[22] She further complained that "[a]fter I was injured I was talked to poorley [sic] and treated harhly [sic] by Kelly Herrera Sup [sic] who left me sitting there per her words 'sit there until I get you' after I reported her to the union."[23] She wrote that Herrera cut her hours, sent her home "for days in a row," spoke to her harshly, told other employees not to talk to her and to pretend she was invisible, and spoke to her in a condescending manner.[24] Additionally, Plaintiff complained that she got the "run around" when she requested a prescription card for her medication, and supervisors wrote her up for a 60-day evaluation "when it was not 60 days."[25]

Plaintiff also made several allegations regarding her injury. For example, she stated "when I was termed [sic] I was told they (USPS) can't prove I got injured at work when a report was taken."[26] Further, she alleged her supervisor knew that 45 days after Plaintiff's injury, the USPS would have to pay worker's compensation, so they fired her before that 45 day period. Specifically, Plaintiff stated, "they fired me before the 45th day so they wouldn't have to pay wk

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 1–2.
[25] *Id.* at 2.
[26] Doc. 10-2 at 2.

6

[sic] comp because they knew I would be out longer because I'm seeing an Ortho Surgeon to correct bone marrow edema & torn ligament rt [sic] ankle."[27] She also alleged:

> "I was retaliated on because I reported a Sup [sic] for poor treatment and mishandling of me working and being injured while working. Retaliating on me also for reporting her for cutting my hours, sending me home, not entering my time, and talking to me harsh and condensending [sic] as well as telling other employees to act if I'm invisible."[28]

Finally, Plaintiff alleged "when I was Fired [sic] by Jeff he told me we can't prove you were hurt on job."[29]

## IV. Discussion

Plaintiff maintains only two of the five claims alleged in her Complaint: retaliation and hostile work environment based upon race and sex under Title VII. Specifically, Plaintiff alleges in Count II that the USPS retaliated against her for engaging in activities protected by Title VII, and in Count IV that Defendant's conduct created a hostile and abusive working environment in violation of Title VII. Defendant moves to dismiss both these claims on the basis that Plaintiff failed to exhaust administrative remedies in resolving these claims.

### A. Failure to Exhaust Administrative Remedies Standard

A plaintiff alleging employment discrimination who fails to file an Equal Employment Opportunity Commission ("EEOC") charge "does not bar a federal court from assuming

---

[27] *Id.*

[28] *Id.*

[29] *Id.* Plaintiff states additional facts and attaches additional documentation in her response to this motion. It is unclear whether these facts and documents are in opposition to the motion to dismiss, or in opposition to summary judgment should the motion be converted. Regardless, the Court does not restate nor consider these additional facts here because they are not pertinent to the sole question in this case: whether Plaintiff exhausted administrative remedies before filing her Title VII claims in federal court.

jurisdiction over a claim."[30] Yet, "plaintiff's failure to file an [EEOC] charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust."[31]

The first step to exhaustion is the filing of a charge of discrimination with the EEOC.[32] Such charges "shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred."[33] "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."[34] As the Tenth Circuit explained, "requiring exhaustion of administrative remedies serves to put an employer on notice of a violation prior to the commencement of judicial proceedings. This in turn serves to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation."[35]

The second step is to determine the scope of the allegations raised in the EEOC charge because "[e]ach incident of discriminatory or retaliatory treatment . . . must be exhausted, meaning the charge must contain facts . . . underlying each claim."[36] In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be

---

[30] *Lincoln*, 900 F.3d at 1185.

[31] *Id.*

[32] 42 U.S.C. § 2000e-5(e)(1).

[33] 42 U.S.C. § 2000e-5(e)(1).

[34] *Lincoln*, 900 F.3d at 1181 (citing *Foster v. Ruhrperpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)).

[35] *Martinez*, 347 F.3d at 1211 (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–35 (1976)).

[36] Brown, 2020 WL 633213, at *8 (internal citations and quotations omitted).

exhausted."[37]  "[A] plaintiff's claim in federal court is generally limited by the scope of administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[38]  Charges filed with the EEOC are liberally construed to determine whether administrative remedies have been exhausted as to a particular claim.[39]  "The failure to mark a particular box [on an EEO charge] creates a presumption that the charging party is not asserting claims represented by that box.  The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."[40]

### B.      Title VII Claims

Title VII expressly protects federal government employees, including employees of the USPS from "discrimination based on race, color, religion, sex, or national origin."[41]  However, Plaintiff did not exhaust administrative remedies available to her for Title VII claims of sex and race discrimination.  The Court finds that an investigation based on race or sex cannot reasonably be expected to follow from the discriminatory acts alleged in the administrative charge because Plaintiff gave no indicia in her EEO complaint that mistreatment she endured was based on her sex or race.

#### 1.      Hostile Work Environment

Under Title VII it is unlawful for an employer:

---

[37] *Goldsby v. James*, 580 Fed. App'x. 685, 686 (10th Cir. 2014) (citing *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014) (vacated and remanded on other grounds by *Green v. Brennan*, 136 S.Ct 1769 (2016))) (brackets and internal quotation marks omitted).

[38] *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (abrogated on other grounds by *Lincoln*, 900 F.3d at 1181).

[39] *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citing *MacKenzie*, 414 F.3d at 1274 (abrogated on other grounds by *Lincoln*, 900 F.3d at 1181)).

[40] Jones, 502 F.3d at 1186 (10th Cir. 2007) (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998)).

[41] 42 U.S.C. § 2000e-16.

9

> "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . or [] to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."[42]

Elements of a hostile work environment based on race or gender under Title VII are: (1) acts alleged by employee are part of the same hostile environment, i.e. are sufficiently related, and involve racial or gender-based animus; (2) harassment was pervasive or severe enough to alter terms, conditions or privilege of employment; and (3) employer's response to incidents of which it was apprised was inadequate.[43]

Here, Plaintiff gave no indication in her EEO complaint that her claims were based on race or sex discrimination such that an administrative investigation would reasonably be expected to follow, even under a liberal construction of the EEO complaint. It does not automatically defeat Plaintiff's claim that she did not check the "race" or "sex" box in the portion of the EEO complaint that prompts "Type of Discrimination You Are Alleging."[44] "[T]he failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box. The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."[45] An administrative investigation could reasonably be expected to follow if these boxes were left unchecked, but the narrative portion of

---

[42] 42 U.S.C. § 2000e-2.

[43] *Tademy v. Union Pac. Corp.* 614 F.3d 1132, 1152 (10th Cir. 2008); *Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016).

[44] Doc. 10-2 at 1.

[45] *Tadlock v. Marshall Cty. HMA, LLC*, 603 Fed. App'x 693, 700 (10th Cir. 2015) (citing *Jones*, 502 F.3d at 1186).

the complaint nonetheless out the employer on notice of an employee's claims based on race or sex discrimination.[46] However, Plaintiff failed to rebut the presumption that she is not asserting a claim based on race or sex because she did not give any indicia of racial or sexual discrimination in the narrative portion of her EEO complaint.

The narrative portion contains no shortage of allegations of mistreatment toward Plaintiff; it alleges Herrera told other employees not to talk to Plaintiff and pretend as if she were invisible, cut her hours, did not enter her work time, and gave Plaintiff a 60-day evaluation for which she was ultimately terminated when she had not yet worked 60 days. However, race or sex is not cited as a reason for this mistreatment, nor mentioned in any manner. Instead, it appears Plaintiff points to her injury as the reason for her mistreatment. In her EEO complaint, Plaintiff wrote her injury was the reason for her mistreatment and retaliation: "I was retaliated on because I reported a Sup [sic] for poor treatment and mishandling of me working and being injured while working."[47] This EEO complaint would reasonably lead to an investigation based on discrimination based on an injury or disability, but not one based on a protected status under Title VII for which Plaintiff now claims. Accordingly, Plaintiff has not exhausted administrative remedies on her hostile work environment claim.

### 2. Retaliation

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[48] To establish a prima facie case

---

[46] *See Jones*, 502 F.3d at 1186–87.

[47] *Id.* at 2.

[48] 42 U.S.C. § 2000e-3.

for retaliation under Title VII, a plaintiff must show (1) the employee engaged in protected opposition to discrimination, (2) the employee suffered an adverse action during or after the protected opposition that a reasonable employee would have found materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action.[49] To establish engagement in a protected opposition to discrimination, a plaintiff need not show actionable discrimination.[50] Instead, the plaintiff must show the opposition derived from a good faith, reasonable belief that his employer subjected him to discrimination.[51] "While we 'liberally construe' the plaintiff's allegations in the EEOC charge, 'the *charge* must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'"[52]

While a plaintiff need not show actual discrimination to prevail in a retaliation claim, Plaintiff's EEO complaint does not even suggest that she had a reasonable belief that her mistreatment was based on her race or sex. Checking the "retaliation" box does not automatically exhaust administrative remedies for a Title VII retaliation claim when the complaint described no Title VII protected class.[53] Plaintiff's EEO complaint characterizes her injury as the reason she was retaliated against, not her race or gender. Although an investigation based on Plaintiff's injury may reasonably follow from her EEO complaint, an investigation based on race or gender retaliation would not.

---

[49] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201–02 (10th Cir. 2008); *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).

[50] *Winters v. Board of Cty. Com'rs of Muskogee Cty., Okla.*, 633 Fed. A'px 684, 688 (10th Cir. 2015) (citing *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984)).

[51] *Id.* at 385.

[52] *Smith v. Cheyenne Ret. Inv'rs, LP*, 904 F.3d 1159, 1164 (10th Cir 2018) (citing *Jones*, 502 F.3d at 1186) (emphasis in original).

[53] *See Andrews v. GEO Group, Inc.*, 288 Fed. App'x 524, 518 (10th Cir. 2008) (finding no exhaustion where "[u]nderstandably, there was no investigation of a claim concerning a job modification because the filing is devoid of any facts concerning such a request" where plaintiff checked the box for "Other," wrote "ADA," and described her claim as "failure to accommodate" in her EEO complaint).

Plaintiff's arguments that she engaged in a protected activity by complaining to a supervisor about Herrera,[54] that a causal connection is present between this protected activity and her mistreatment and termination, and that she indeed suffered mistreatment to support her claims of a hostile work environment and retaliation are ineffective. Even if each of these allegations were true, these claims must first be administratively exhausted to survive a motion to dismiss. Similarly, her argument that no administrative investigation occurred following her EEO complaint does not save her claim because still nothing in the EEO complaint would reasonably lead to an administrative investigation based on race or sex.

Because the Court dismisses Plaintiff's remaining claims for failure to exhaust administrative remedies, it need not reach Defendant's alternative motion for summary judgment as it is moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss for Failure to State a Claim, or in the Alternative for Summary Judgment is granted in part and denied in part. Defendant's Motion to Dismiss is **granted.** Defendant's Motion for Summary Judgment is **denied.**

**IT IS SO ORDERED.**

Dated: March 2, 2020

S/ Julie A. Robinson  
JULIE A. ROBINSON  
CHIEF UNITED STATES DISTRICT JUDGE

---

[54] Plaintiff argues for the first time in her response to this motion that the protected action of complaining to a supervisor other than Herrera was the protected action that induced retaliation against her. Yet, even accepting this fact as true, it has no impact on the Court's finding that Plaintiff failed to exhaust her claims.